UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID BLYSTONE,<br><br>Defendant. | CAUSE NO. 3:26cr4 DRL |

SENTENCING MEMORANDUM

David Blystone had seven ghost guns and assorted ammunition when he couldn't by law. He pleaded guilty to unlawfully possessing ammunition as a felon. 18 U.S.C. § 922(g)(1).

SENTENCING GUIDELINES

The court must calculate the guideline range correctly, then decide what sentence is right and reasonable for this defendant. *Dean v. United States*, 581 U.S. 62, 67 (2017); *United States v. Swank*, 37 F.4th 1331, 1334 (7th Cir. 2022). The 2026 guidelines apply. *Peugh v. United States*, 569 U.S. 530, 537-38 (2013).

A. *Defendant's Objection to the Ghost Gun Enhancement.*

Mr. Blystone objects to the four-level enhancement for unserialized firearms. He argues that the government cannot show he knew the firearms had missing serial numbers. The government contends that, because all the firearms were privately manufactured, and because he had tools, firearm parts, accessories, and ammunition, and admittedly made firearms, he could not have been unaware that the unbranded firearms in his possession lacked serial numbers.

A four-level enhancement applies when a "defendant knew that any firearm involved in the offense was not otherwise marked with a serial number." U.S.S.G. § 2K2.1(b)(4)(B)(ii). It

applies whether he knew or whether he stayed willfully blind or consciously avoided knowing. U.S.S.G. § 2K2.1(b)(4)(B) app. n.8(B). The government must prove an enhancement by a preponderance of the evidence. *United States v. Hines*, 449 F.3d 808, 815 (7th Cir. 2006). The guidelines don't define "knowledge" or "knowingly," so the court construes these terms to have their "usual meaning." *United States v. Bader*, 956 F.2d 708, 710 (7th Cir. 1992).

A person acts "knowingly" when he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. *United States v. Pierotti*, 777 F.3d 917, 919 (7th Cir. 2015). Knowledge can be reasonably inferred from circumstantial evidence of his control, *see United States v. Tylkowski*, 9 F.3d 1255, 1260-61 (7th Cir. 1993) (circumstantial evidence of defendant's control over a box sufficient to support a reasonable inference that he knew it contained illegally converted machine guns with obliterated serial numbers), or from knowingly possessing the firearm, *see United States v. Thornton*, 463 F.3d 693, 699 (7th Cir. 2006) (defendant knew of obliterated serial number from possessing the gun).

The government met its burden. Mr. Blystone had seven unbranded and unregistered rifles or handguns without serial numbers, all out in the open in his house, and significant amounts of tools, yet-to-be-assembled firearm parts, accessories, and ammunition. He isn't a novice. He admitted to making firearms, had done it before, had military training in weapons, and reported that building firearms was his "only hobby." It was reported too that he claimed to be making certain firearms fully automatic. Whether he made each one originally, his possession (indeed sole possession of them in a home where he alone lived), his historical knowledge of firearms, and his close handling of a number of them, including for conversion, circumstantially establish his knowledge. *See Tylkowski*, 9 F.3d at 1260-61. It would be a stretch on this record, rather than probable, that Mr. Blystone didn't know that any one of seven unbranded firearms

lacked a serial number when all he needed to do was look at them. *See Thornton*, 463 F.3d at 699. And the record shows he did. The enhancement applies. The court overrules his objection to ¶ 21-22 and 31-32 (and any other affected paragraphs).

B. *Guideline Calculation.*

The court adopts ¶ 1-108 of the revised presentence report. Mr. Blystone starts at level 20 because, aside ammunition, he possessed short-barreled rifles. U.S.S.G. § 2K2.1(a)(4)(B); *see also* 26 U.S.C. § 5845(a). He gets two levels for seven firearms, U.S.S.G. § 2K2.1(b)(1)(A), and four levels because he knew a firearm lacked a serial number, U.S.S.G. § 2K2.1(b)(4)(B)(ii). His clear and timely acceptance of responsibility takes him downward to level 23. U.S.S.G. § 3E1.1.

The guidelines assess eight criminal history points. Within criminal history category IV, the guidelines recommend a sentencing range of 70-87 months, U.S.S.G. chap. 5A, below the statutory maximum of 180 months, *see* 18 U.S.C. § 924(a)(8).

## DISCUSSION

The court decides this sentence under 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005). Turning to the statutory factors, the court must arrive at a reasonable sentence—one sufficient but not greater than necessary to satisfy the statute's purposes. 18 U.S.C. § 3553(a).

Mr. Blystone's obsession with guns now costs him three terms in federal prison. 18 U.S.C. § 3553(a)(1). In 2012 (age 45), he was making explosives and building machine guns (some without serial numbers). Up to that point, he had but a handful of misdemeanors for driving offenses and intoxication, and none for almost 20 years. He received 18 months from a predecessor—a variance below a guideline range of 37-46 months largely because of his stable marriage, employment, military service, and long time between arrests. In 2019 (age 51), still with a longstanding marriage but also growing physical and mental health challenges and a growing

rap sheet of four felonies, he received 21 months (a low-end sentence) after having two loaded firearms in his home, believing that he needed to become armed to take on drug dealers. *Id.*

At some point a hobbyist becomes an enthusiast and, if he never stops despite the law, a zealot. This time, a few years after Mr. Blystone completed his last federal sentence, he had seven ghost guns, all untraceable. All five rifles were short-barreled. Metal cases and duffle bags stored a large amount of assorted ammunition, some loaded in stacks of magazines, many large-capacity magazines. He had pistol frames, jigs, parts, tools, holsters, and a privately manufactured suppressor. He was modifying certain guns to be fully automatic. Except for building firearms for a family member and a buddy, he seemed to keep everything largely at home, neither selling nor using any of this for another illegal purpose. Whether his statements might be boasts or threats, he still was loaded for bear and made it clear selling him out or coming to his home unwelcomed would be a bad idea. Anyone using methamphetamine in daily dosages, as he was, could not be considered less a danger. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (a)(2)(C).

Medical issues, mental health challenges, drug use, and the passing years have gradually isolated him more—a cause for both empathy and concern. 18 U.S.C. § 3553(a)(1). He served in the United States Navy until marijuana use in the late 1980s resulted in an other-than-honorable discharge. He worked for decades as a skilled mechanic, even became a senior master technician at Ford Motor Company. A head injury (in a car accident), osteoarthritis, torn rotator cuff, prostate cancer (in remission), bad hips (for which he uses a walker), and a host of other physical conditions ceased his career as he turned to disability in 2022, and they plague him still. A number of medications also treat a history of mental health, including bipolar disorder, depression, and anxiety. Most of his conditions, today altogether more serious than some defendants, existed when he committed this offense; he retained enough mobility to acquire and horde firearms and

ammunition nonetheless, and nothing indicates he could not do so again. They also are in the whole treatable by the Bureau of Prisons, though they might direct a thoughtful placement. Persistent substance abuse impeded his potential over the years as he graduated from alcohol to marijuana to methamphetamine. Heavy drug use separated him from his wife of 30 years when Mr. Blystone declined in 2018 her ask to seek treatment. Pain, both physical and emotional, kept the drug close by, the court suspects. *Id.*

The guidelines lend a hope of fair sentencing practices, and fair sentences promote respect for the law. 18 U.S.C. §§ 3553(a)(2)(A), (a)(4), (a)(6).[1] They account for some serious aggravating factors already. Today they lend a measure of certainty too, and that certainty helps to address what has become more dogged than just an occasional hobby. The untraceable nature of ghost guns, the number of ghost guns Mr. Blystone had, and his willingness, even privately, to build and give such a gun to another person, even if to a small circle, ensure that the enhancement does not overstate the seriousness of his offense or his risk of recidivism.[2] The more isolated Mr. Blystone becomes, the greater his abuse of a serious drug, the less productive he is (despite obvious skills with machining tools as a master of his craft), the greater the likelihood that three times will become four. The court cannot assume future choices will be good ones when so many in his past have been bad ones. 18 U.S.C. §§ 3553(a)(2)(B), (a)(2)(C).

---

[1] *See also* United States Sent. Comm'n (USSC), *Judiciary Sentencing Information Dashboard (JSIN)* (last visited Nov. 13, 2026) (for 605 defendants in the last five years with same final offense level, criminal history category, and primary guideline of § 2K2.1, average sentence of imprisonment was 67 months).

[2] This enhancement was added via Amendment 819 effective November 1, 2023. The court historically has addressed concerns with ghost guns for sentencing purposes even before this enhancement existed or applied.

Based on all § 3553(a) factors, a sentence of 70 months is sufficient but not greater than necessary to satisfy federal sentencing goals.

The court may impose a term of supervised release of up to 3 years. 18 U.S.C. § 3583(b)(2); *see* U.S.S.G. § 5D1.2. A term of 2 years is appropriate. This will afford him the opportunity to receive substance abuse treatment and to monitor against his return to firearms. His release will be governed by the recommended conditions for the reasons stated here and in the revised presentence report.

He can't pay the fines recommended by the guidelines, even if afforded the most generous of installment payment schedules, so the court imposes no fine. A special assessment of $100.00 is mandatory. 18 U.S.C. § 3013.

SENTENCE

Accordingly, it is the court's judgment that the defendant, David Blystone, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 70 months.

Under 18 U.S.C. § 3585, the court leaves it to the Bureau of Prisons to determine the appropriate amount of time served to be credited toward the defendant's sentence. The court recommends the Bureau of Prisons designate as the place of the defendant's confinement, consistent with his security classification as determined by the Bureau of Prisons, a facility where he may receive appropriate medical and mental health treatment tailored to his needs.

Upon release from prison, the defendant will be placed on supervised release for a term of 2 years. While on supervised release, he must comply with the terms of supervision set forth in ¶ 109-119 of the revised presentence report, which paragraphs the court incorporates as part of this sentence having made an individualized judgment that they should be imposed. The

defendant expressly waived reading of these supervisory conditions. The court directs the probation officer to provide the defendant with a written statement of all conditions.

The court imposes no fine. The defendant must pay to the United States a special assessment of $100.00, which is due immediately.

The court makes the preliminary order of forfeiture [28] final as to the defendant and includes it as part of the judgment today and will await the government's motion for a final order as to third-party interests. The court dismisses count 2 of the indictment on the government's motion and grants the defendant's motion for leave to file a later sentencing memorandum [36].

SO ORDERED.

November 24, 2026

*s/ Damon R. Leichty*
Judge, United States District Court

cc: Mr. David Blystone